UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| INTERNATIONAL ASSOCIATION OF MACHINISTS & AEROSPACE WORKERS, DISTRICT LODGE 4 and LOCAL LODGE S6,<br><br>             Plaintiff,<br><br>v.<br><br>BATH IRON WORKS, INC., a SUBSIDIARY OF GENERAL DYNAMICS CORP.,<br><br>             Defendant. | )<br>)<br>)<br>)<br>)  Docket no. 2:15-cv-147-GZS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

ORDER ON MOTION TO DISMISS

Before the Court is the Motion to Dismiss (ECF No. 8) by Defendant Bath Iron Works, Inc. and the Motion for Oral Argument (ECF No. 11) by Plaintiff International Association of Machinists & Aerospace Workers, District Lodge 4 & Local Lodge S6. The Motion for Oral Argument is hereby DENIED upon the Court finding, in an exercise of its discretion, that the papers provide an adequate basis for deciding the pending Motion to Dismiss. See D. Me. Local R. 7(f). For reasons briefly explained herein, the Motion to Dismiss is GRANTED.

I.     STANDARD OF REVIEW

The Federal Rules of Civil Procedure require only that a complaint contain "a short and plain statement of the grounds for the court's jurisdiction . . . a short and plain statement of the claim showing that the pleader is entitled to relief; and a demand for the relief sought[.]" Fed. R. Civ. P. 8(a)(1)-(3). In deciding a motion seeking dismissal for failure to state a claim, the Court

assumes the truth of the complaint's well-pleaded facts and draws all reasonable inferences in plaintiff's favor. Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). Under Rule 12(b)(6), the Court "may consider only facts and documents that are part of or incorporated into the complaint." United Auto., Aero., Agric. Implement Workers of Am. Int'l Union v. Fortuno, 633 F.3d 37, 39 (1st Cir. 2011) (internal citations omitted); see also Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) ("When the complaint relies upon a document, whose authenticity is not challenged, such a document 'merges into the pleadings' and the court may properly consider it under a Rule 12(b)(6) motion to dismiss.")

A viable complaint need not proffer "heightened fact pleading of specifics," but in order to survive a motion to dismiss it must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). In considering a motion to dismiss, the Court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). A plaintiff must include enough facts supporting a claim for relief that "nudge[s][the] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010)); see also Iqbal, 556 U.S. at 678 (stating that the Court need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements").

**II.     FACTUAL BACKGROUND**

Plaintiff International Association of Machinist and Aerospace Workers, District Lodge 4, Local Lodge S6 ("Local S6" or the "Union") is a labor union representing thousands of production workers employed by Bath Iron Works, Inc., a subsidiary of General Dynamics Corporation. Defendant Bath Iron Works, Inc. ("BIW" or the "Company") is primarily located in Bath and Brunswick, Maine, and is engaged in the business of building ships for the United States Navy.

The employment relationship between BIW and the Union members is governed by a collective bargaining agreement ("CBA"), which has been provided to the Court (ECF Nos. 8-3 – 8-5 at Page ID#s 41-148).[1] As explained in the Complaint, every CBA between the Union and BIW since at least 1994 has included a listing of Job Classifications. Beginning with the 1997 CBA, and continuing to the present, BIW and the Union have maintained an addendum to the CBA that details all of the specific tasks performed by each Job Classification (the "Blue Book"). BIW is not permitted to assign work outside the parameters of the Blue Book. The Union may grieve – and has done so on hundreds of occasions – assignments in violation of the Blue Book.

In addition to the CBA, the parties have a Memorandum of Understanding, dated December 10, 2001 (hereinafter "2001 MOU") (ECF No. 8-6),[2] which sets up a process for adding or changing "a Job Function in the Classification Task List (Blue Book)."  (Id. at Page ID# 150.) This 2001 MOU states:  "If agreement cannot be reached at any level, the issue will be resolved in accordance with the provisions of Article 39 of the Joint Agreement."  (Id.)  "Article 39 of the Joint Agreement" is a reference to the "Joint Agreement Process" section of the CBA.  Article 39,

---

[1] Although this case is currently before the Court on a motion to dismiss, the Court may properly consider the CBA as a document sufficiently referred to in the Complaint and central to the Plaintiff's claims.  See, e.g., Fire & Police Pension Ass'n of Colorado v. Abiomed, Inc., 778 F.3d 228, 232 & n. 2 (1st Cir. 2015) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).

[2] This document may also be properly considered by the Court in deciding the motion to dismiss.  See supra note 1.

3

in turn, indicates that when the joint agreement process does not result in an agreement between the parties, "[t]he Company can at that point implement its decision, which may be subject to the accelerated arbitration process in Article 24." (Id. at PageID# 100.) Article 24 of the CBA details a three-step process to resolve disputes "raised by any employee(s) or the Union." (Id. at Page ID# 89 (Sections 1-4).) The third step in that process is arbitration. Section 5 of Article 24 is titled "Accelerated Arbitration" and indicated that this type of arbitration proceeding may be instituted by "BIW or the Union." (Id. at PageID# 90 (Section 5).)

The present dispute began in January 2015 when BIW proposed to implement a "job function reallocation and modification." In all, BIW proposed over 100 "reallocations" that would have expanded the tasks that could be done by various Job classifications. The Union maintained that BIW's proposal was not subject to the 2001 MOU and as a result refused to engage in the Article 39 Joint Agreement Process. In response, BIW informed the Union that it intended to implement the "job function reallocation and modification." On April 2, 2015, BIW demanded arbitration as a mechanism for resolving this dispute.

Via the pending complaint, the Union seeks a declaration that this dispute is unarbitrable. The Union argues that the reallocations are not subject to the 2001 MOU or any other arbitration provision in the CBA. Rather, the Union maintains that BIW is attempting to implement "Associated Functions," a provision that was included in CBAs between 1994 and 2000 and resulted in a prolonged strike in 2000. This strike ended with the signing of a new CBA that had eliminated "Associated Functions."[3] (See Compl. ¶¶ 11-13, 15-18, 28.)

---

[3] The Union's Complaint does note that the current CBA replicates language from prior CBAs with respect to Article 36 (scoping) and Article 37 (Rescoping). These articles discuss how work is assigned to given classifications but also notes that both processes are subject to the Article 39 Joint Agreement Process already detailed above.

4

## III.  DISCUSSION

Under the established framework for determining whether a dispute is arbitrable, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 297 (2010) (emphasis in original).  Where the parties concede that they have agree to arbitrate "*some* matters pursuant to an arbitration clause, the 'law's permissive policies in respect to arbitration' counsel that 'any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration.'" Granite Rock Co., 561 U.S. at 298 (*quoting* First Options of Chicago v. Kaplan, 514 U.S. 938, 945 (1995)); see also  Shaw's Supermarkets, Inc. v. United Food & Commercial Workers Union, Local 791, AFL-CIO, 321 F.3d 251, 254 (1st Cir. 2003) (discussing and applying the presumption of arbitrability).

Accepting the Plaintiff's description of the current dispute, the Court finds no "positive assurance" that the parties' agreement to arbitrate "is not susceptible to an interpretation that covers the asserted dispute." United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582-83 (1960) ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.")  Rather, the Court concludes that the present dispute is subject to Article 39.  As a result, it appears BIW would have been permitted to implement its January 2015 "job function reallocation and modification" if no joint agreement was reached.  To the extent that the Union objects to this implementation, its remedy would be grievance under Article 24, which could culminate in arbitration as the third step of Article 24.[4]  In short, there is a designated path for this dispute and that path requires arbitration.

---

[4] To the extent Local S6 argues that the Company may not invoke arbitration, the Court concludes it need not address or resolve that argument.  Having concluded that arbitration can be initiated on the disputed issue, the Court need not

5

In asking this Court to make a determination as to whether BIW's "job function reallocation and modification" is allowed under the 2001 MOU or should be deemed an "associated function" that is no longer allowed under the MOU or the CBA, the Union is asking this Court to weigh in on the merits of its current dispute with BIW. However, upon a determination that there is an applicable agreement to arbitrate, "a court generally has 'no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim.'" Ramirez-Lebron v. Int'l Shipping Agency, Inc., 593 F.3d 124, 134 (1st Cir. 2010) (*quoting* United Steelworkers v. Am. Mfg. Co., 363 U.S. 564, 567 (1960)). Given this clear limitation, the Court's discussion of the legal issues presented must end upon finding an arbitrable dispute.

## IV.   CONCLUSION

In light of the Court's determination that the dispute pled in Plaintiff's Complaint is arbitrable, the Court concludes that Plaintiff's Complaint fails to state a plausible claim for declaratory relief. Therefore, the Court hereby GRANTS Defendant's Motion to Dismiss (ECF No. 8).

SO ORDERED.

/s/ George Z. Singal  
United States District Judge

Dated this 12th day of June, 2015.

---

resolve who can or must initiate the arbitration or whether that arbitration would be under section 4 or section 5 of Article 24.